FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 19, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER W.,[1] <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:20-cv-05234-MKD <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 16, 17 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 16, and grants Defendant's motion, ECF No. 17.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

ORDER - 2

F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

ORDER - 3

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

ORDER - 4

1    If the severity of the claimant's impairment does not meet or exceed the

2    severity of the enumerated impairments, the Commissioner must pause to assess

3    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

4    defined generally as the claimant's ability to perform physical and mental work

5    activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

6    404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the

7    analysis.

8    At step four, the Commissioner considers whether, in view of the claimant's

9    RFC, the claimant is capable of performing work that he or she has performed in

10   the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

11   If the claimant is capable of performing past relevant work, the Commissioner

12   must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

13   If the claimant is incapable of performing such work, the analysis proceeds to step

14   five.

15   At step five, the Commissioner considers whether, in view of the claimant's

16   RFC, the claimant is capable of performing other work in the national economy.

17   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

18   the Commissioner must also consider vocational factors such as the claimant's age,

19   education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

20   416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

ORDER - 5

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 20, 2018, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of July 24, 2017.[2]  Tr. 15, 166-67, 294-306.  The applications were denied initially and on reconsideration.  Tr. 206-12, 215-20.  Plaintiff appeared before an administrative law judge (ALJ) on April 30, 2020, and a supplemental

---

[2] Plaintiff previously applied for disability benefits on January 15, 2014, which resulted in an unfavorable ALJ decision on May 25, 2017.  Tr. 15, 114-32.  The Appeals Council declined to review the decision.  Tr. 15, 133-39.

ORDER - 6

hearing was held on June 9, 2020.  Tr. 70-113.  On June 29, 2020, the ALJ denied

Plaintiff's claim.  Tr. 12-34.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through September 30, 2017, has not

engaged in substantial gainful activity since July 24, 2017.  Tr. 18.  At step two,

the ALJ found that Plaintiff has the following severe impairments: mood disorder,

anxiety disorder, borderline personality disorder, and PTSD.  Tr. 19.

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 22.  The ALJ then concluded that Plaintiff has the RFC to perform

work at all exertional levels with the following nonexertional limitations:

> [Plaintiff] is limited to simple, routine, repetitive tasks; she is
> precluded from contact with the public; she can have occasional,
> superficial contact with supervisors and coworkers, with no
> collaborative tasks; and she requires a routine, predictable work
> environment with no more than occasional changes, simple
> decision[-]making, and no multi-tasking, assembly line pace, or other
> fast-paced work.

Tr. 23.

At step four, the ALJ found Plaintiff is unable to perform any of her past

relevant work.  Tr. 26.  At step five, the ALJ found that, considering Plaintiff's

age, education, work experience, RFC, and testimony from the vocational expert,

there were jobs that existed in significant numbers in the national economy that

ORDER - 7

Plaintiff could perform, such as cleaner II, industrial cleaner, and landscape specialist.  Tr. 27.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of July 24, 2017 through the date of the decision.  Tr. 28.

On September 23, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly considered *Chavez*;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ conducted a proper step-two analysis;

4.  Whether the ALJ conducted a proper step-three analysis;

5.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

6.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 16 at 4-5.

ORDER - 8

**DISCUSSION**

**A.** *Chavez*

Plaintiff contends the ALJ erred in adopting the prior ALJ's findings regarding Plaintiff's physical impairments.  ECF No. 16 at 7-9.

"The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings."  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1998) (citing *Lyle v. Sec'y of Health and Human Servs.*, 700 F.2d 566, 568 n.2 (9th Cir. 1983)).  Under the doctrine of res judicata, a prior, final determination of nondisability bars relitigation of that claim through the date of the prior decision.  *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995).  In the Ninth Circuit, a prior final determination of nondisability "create[s] a presumption that [the claimant] continued to be able to work after that date."  *Id*. (citation and internal quotation marks omitted).[3] However, the "authority to apply res judicata to the period *subsequent* to a prior

_____

[3] Acquiescence Ruling (AR) 97-4(9) explains how *Chavez* differs from the Social Security Administration's (SSA) interpretation of Social Security policy requiring de novo review of claims for unadjudicated periods.  The SSA applies the *Chavez* presumption only as to claimants residing in the Ninth Circuit.  AR 97-4(9), available at 1997 WL 742758 at *3.

ORDER - 9

1  determination is much more limited." *Lester*, 81 F.3d at 827 (emphasis in

2  original).  "The claimant, in order to overcome the presumption of continuing

3  nondisability arising from the first administrative law judge's findings of

4  nondisability, must prove 'changed circumstances' indicating a greater disability."

5  *Chavez*, 844 F.2d at 693 (citation omitted).  Examples of changed circumstances

6  include "[a]n increase in the severity of the claimant's impairment," "a change in

7  the claimant's age category," and a new issue raised by the claimant, "such as the

8  existence of an impairment not considered in the previous application."  *Lester*, 81

9  F.3d at 827-28 (citations omitted); *see also* AR 97-4(9), available at 1997 WL

10  742758 at *3.

11      Here, the ALJ adopted the prior ALJ's finding that Plaintiff does not have a

12  severe physical impairment.  Tr. 16.  The ALJ found there was no new and

13  material evidence concerning Plaintiff's physical impairments.  Tr. 19.  Plaintiff

14  argues she has a new diagnosis of fibromyalgia, ECF No. 16 at 8, however, as

15  discussed further *infra,* the ALJ reasonably found fibromyalgia is not a medically

16  determinable impairment.  Plaintiff cites to evidence of other physical symptoms

17  but does not demonstrate the evidence is material.  *Id.* at 8-9.  The ALJ did not err

18  in adopting the prior ALJ's findings regarding Plaintiff's physical impairments.

19  Plaintiff is not entitled to remand on these grounds.

20      **B. Medical Opinion Evidence**

ORDER - 10

Plaintiff contends the ALJ erred in his consideration of the opinions of Mary Beth Swihart, ARNP; Farrukh Hashmi, M.D.; Kishore Varada, PA-C; Jamie Graham, MSW, MHP; Nancy Hillmer, ARNP; and Donna Veraldi, Ph.D. ECF No. 16 at 9-15.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding"

ORDER - 11

(including, but not limited to, "evidence showing a medical source has familiarity

with the other evidence in the claim or an understanding of our disability

program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-

(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered. 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in

the regulations:

(1) *Supportability.* The more relevant the objective medical evidence
and supporting explanations presented by a medical source are to
support his or her medical opinion(s) or prior administrative
medical finding(s), the more persuasive the medical opinions or
prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior
administrative medical finding(s) is with the evidence from other
medical sources and nonmedical sources in the claim, the more
persuasive the medical opinion(s) or prior administrative medical
finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not

required to, explain how the other factors were considered. 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions

or prior administrative findings "about the same issue are both equally well-

supported . . . and consistent with the record . . . but are not exactly the same," the

ALJ is required to explain how "the other most persuasive factors in paragraphs

ORDER - 12

1  (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3),

2  416.920c(b)(3).

3       Defendant argues Ninth Circuit case law is no longer controlling in light of

4  the amended regulations, specifically whether the "clear and convincing" and

5  "specific and legitimate" standards still apply.  ECF No. 17 at 11-13.  The Ninth

6  Circuit recently addressed the issue of whether the changes to the regulations

7  displace the longstanding case law requiring an ALJ to provide specific and

8  legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*,

9  No. 21-35458, 2022 WL 1195334, at *3 (9th Cir. Apr. 22, 2022).  The Court held

10 that the new regulations eliminate any hierarchy of medical opinions, and the

11 specific and legitimate standard no longer applies.  *Id.* at *3-4.  The Court reasoned

12 the "relationship factors" remain relevant under the new regulations, and thus the

13 ALJ can still consider the length and purpose of the treatment relationship, the

14 frequency of examinations, the kinds and extent of examinations that the medical

15 source has performed or ordered from specialists, and whether the medical source

16 has examined the claimant or merely reviewed the claimant's records.  *Id.* at 6.

17 However, the ALJ is not required to make specific findings regarding the

18 relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an

19 explanation supported by substantial evidence when rejecting an examining or

20 treating doctor's opinion as unsupported or inconsistent.  *Id.*

ORDER - 13

1

    *1. Ms. Swihart*

2

    Ms. Swihart, a treating nurse practitioner, rendered opinions on Plaintiff's

3

functioning in February and March 2020.  Tr. 1486-91.  The ALJ addressed both

4

opinions and gave multiple reasons to find the opinions were not persuasive.  Tr.

5

21.  Plaintiff argues the ALJ erred by failing to address either of Ms. Swihart's

6

opinions.  ECF No. 16 at 14-15 (citing to Tr. 25-26).  Defendant's responsive brief

7

cites to the ALJ's analysis of Ms. Swihart's opinion.  ECF No. 17 at 18-19.

8

However, Plaintiff's reply brief states that while Defendant asserts the ALJ offered

9

valid reasons to find Ms. Swihart's opinions unpersuasive, "Defendant is unable to

10

provide any reasoning or point to where it is contained in the decision."  ECF No.

11

18 at 8.  Plaintiff's assertion is a misrepresentation of the record and Defendant's

12

brief.  Plaintiff has failed to challenge any of the reasons the ALJ set forth in

13

finding Ms. Swihart's opinion unpersuasive.  Thus, any challenge to those findings

14

is waived.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2

15

(9th Cir. 2008) (determining Court may decline to address on the merits issues not

16

argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the

17

Court may not consider on appeal issues not "specifically and distinctly argued" in

18

the party's opening brief).  The Court declines to address this issue.

19

    *2. Dr. Hashmi and Mr. Varada*

20

 

On August 7, 2017, Dr. Hashmi and Mr. Varada, both of whom are treating providers, co-signed an opinion regarding Plaintiff's functioning.  Tr. 553-56. They opined Plaintiff has moderate limitations in her ability to ask simple questions or request assistance, and be aware of normal hazards and take appropriate precautions; severe limitations in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday/workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers/peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and travel to unfamiliar places or use public transportation; and Plaintiff has marked limitations in the remaining areas of functioning.  Tr. 553-54.  Regarding the "B" Criteria, they opined Plaintiff has marked limitations in her ability to understand, remember or apply information and adapt or manage oneself, and extreme limitations in her ability to interact with others, and concentrate, persist or maintain pace.  Tr. 555.  They further opined

ORDER - 15

Plaintiff meets the "C" Criteria of mental listings, and she would be off task more than 30 percent of the time, but she would miss no work.  Tr. 555-56.  The ALJ found Dr. Hashmi and Mr. Varada's opinion was not persuasive.  Tr. 25.

First, the ALJ found the opinion was in a check-box form and lacked a supporting narrative or explanation.  *Id.*  Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The opinion consists only of check boxes and does not contain any explanation or citations to supporting evidence.  Tr. 553-56.  Plaintiff argues the opinion is supported by the treatment notes, however the ALJ reasonably found the opinion is also not supported by the treatment records, as discussed *infra*.

Second, the ALJ found the opinion was inconsistent with Plaintiff's activities of daily living.  Tr. 25.  Consistency with the other evidence is one of the most important factors in determining the persuasiveness of an opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  While the opinion indicates Plaintiff has marked to severe limitations in almost every area of functioning, Tr. 553-56, Plaintiff has reported caring for her children without support, completing

ORDER - 16

household tasks, handling her finances without issue, and attending college courses, Tr. 24.  Although Plaintiff argues she did not complete the GED course, and she received support from her parents in caring for her children, there are contradictory records that document Plaintiff reporting she completed the GED course, and reports her mother was only in town for a few months, as discussed further *infra.*  The ALJ reasonably found Plaintiff's activities of daily living were inconsistent with marked to severe limitations.

Third, the ALJ found the opinion was not supported by the treatment records.  Tr. 25.  Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  While treatment records document some abnormalities, the ALJ noted Plaintiff often had many normal findings on mental status examination, and the level of abnormalities was not consistent with disabling mental health limitations.  Tr. 22-24.  The ALJ found the opinion was also not consistent with Mr. Varada's own treatment notes.  Tr. 25.  Plaintiff argues the ALJ failed to address the providers' notes, ECF No. 16 at 9-10, however the ALJ's decision contains analysis of the providers' treatment notes in other portions of the decision, Tr. 22-24.  As an ALJ's decision should be

read as a whole, the Court considers the ALJ's overall analysis of the medical

evidence.  *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Rice v.*

*Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).

While Mr. Varada opined in August 2017 that Plaintiff has marked to severe

limitations in most areas of functioning, Plaintiff had generally normal findings on

examination on the day Mr. Varada rendered the opinion, as well as at

appointments following and preceding the opinion date.  Tr. 587, 590, 593.

Plaintiff was noted as sad/depressed, anxious, and hopeless, with poor

confidence/esteem, but normal appearance, behavior, speech, thought process,

insight/judgment, consciousness, orientation, memory, language, and fund of

knowledge.  Tr. 587, 590.  Plaintiff argues Mr. Varada's treatment records are

consistent with the opinion, however Plaintiff largely cites to her own self-reported

symptoms such as impaired sleep, fatigue, feelings of having too much

responsibility, while Plaintiff had largely normal mental status examinations

despite her reported symptoms.  ECF No. 16 at 11, Tr. 534-35, 1379-80.  The ALJ

reasonably found the opinion was inconsistent with the objective medical evidence.

*3.  Ms. Graham*

On March 30, 2018, Ms. Graham, a treating provider, rendered an opinion

on Plaintiff's functioning.  Tr. 1367-70.  Ms. Graham opined Plaintiff has no

significant limitations in her ability to respond appropriately to changes in the

ORDER - 18

work setting; mild limitations in her ability to remember locations and work-like

procedures, understand/remember very short and simple instructions, carry out

very short simple instructions, make simple work-related decisions, get along with

coworkers or peers without distracting them or exhibiting behavioral extremes,

maintain socially appropriate behavior and adhere to basic standards of

neatness/cleanliness, be aware of normal hazards and take appropriate precautions;

moderate limitations in her ability to understand and remember detailed

instructions, carry out detailed instructions, maintain attention/concentration for

extended periods, sustain an ordinary routine without special supervision, ask

simple questions or request assistance, and accept instructions and respond

appropriately to criticism from supervisors; and marked limitations in her ability to

perform activities within a schedule, maintain regular attendance and be punctual

within customary tolerances, work in coordination with or proximity to others

without being distracted by them, complete a normal workday/workweek without

interruptions from psychologically based symptoms and perform at a consistent

pace without an unreasonable number/length of rest periods, interact appropriately

with the general public, travel to unfamiliar places or use public transportation, and

set realistic goals or make plans independently of others.  Tr. 1367-68.  She opined

Plaintiff has moderate limitations in her ability to understand, remember, or apply

information and marked limitations in the other three "B" criteria, and Plaintiff

ORDER - 19

meets the "C" criteria of the mental health listings.  Tr. 1369.  She further opined

Plaintiff would be off task more than 30 percent of the time and would miss four or

more days per month of work.  Tr. 1370.  The ALJ found Ms. Graham's opinion

was not persuasive.  Tr. 26.

First, the ALJ found Ms. Graham's opinion was in a check-box form and

lacked a supporting narrative or explanation.  *Id.*  Supportability is one of the most

important factors an ALJ must consider when determining how persuasive a

medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more

relevant objective evidence and supporting explanations that support a medical

opinion, the more persuasive the medical opinion is.  20 C.F.R. §§

404.1520c(c)(1), 416.920c(c)(1).  Ms. Graham's opinion consists only of check

boxes and does not contain any explanation or citations to supporting evidence.

Tr. 1367-70.  Plaintiff argues the opinion is supported by the treatment notes,

however the ALJ reasonably found the opinion is also not supported by the

treatment records, as discussed *infra.*

Second, the ALJ found Ms. Graham's opinion was inconsistent with

Plaintiff's activities of daily living.  Tr. 25.  Consistency with the other evidence is

one of the most important factors in determining the persuasiveness of an opinion.

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As discussed *supra,* the ALJ

reasonably found Plaintiff's ability to engage in multiple activities, including

ORDER - 20

1   independently caring for herself, her household, and multiple children and taking

2   classes through a college, is inconsistent with an opinion that Plaintiff has multiple

3   marked limitations.

4           Third, the ALJ found Ms. Graham's opinion is not supported by the

5   treatment records.  Tr. 25-26.  Supportability is one of the most important factors

6   an ALJ must consider when determining how persuasive a medical opinion is.  20

7   C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence

8   and supporting explanations that support a medical opinion, the more persuasive

9   the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Ms.

10  Graham's records document Plaintiff's self-reported anxiety and depression

11  symptoms, suicidal ideation when stressed, and reported limitations.  Tr. 561, 567,

12  569, 573, 575, 1376.  The records contain minimal objective evidence; Ms.

13  Graham noted Plaintiff was tearful at multiple appointments, but noted Plaintiff

14  was alert and oriented, and did not document any other mental status examination

15  findings.  Tr. 568, 571, 573, 575, 1376.  While Plaintiff argues Ms. Graham's

16  treatment records support her opinion, ECF No. 16 at 12, there is minimal evidence

17  that supports her opinion.  For example, Ms. Graham opined Plaintiff has moderate

18  limitations in her ability to understand and remember detailed instructions, but her

19  records do not contain any notes regarding Plaintiff's memory.  Tr. 1367.  While

20  she opined Plaintiff has marked limitations in her ability to concentrate, persist, or

maintain pace, Tr. 1369, there is little objective evidence of Plaintiff's ability to

concentrate during appointments.  The ALJ reasonably found Ms. Graham's

opinion is not supported by the treatment records.

   *4. Ms. Hillmer*

   On February 10, 2020, Ms. Hillmer, a treating provider, rendered an opinion

on Plaintiff's functioning.  Tr. 1450-53.  Ms. Hillmer opined Plaintiff has moderate

limitations in her ability to carry out very short simple instructions, marked

limitations in her ability to remember locations and work-like procedures,

understand/remember very short and simple instructions, make simple work-

related decisions, respond appropriately to changes in the work setting, be aware of

normal hazards and take appropriate precautions, and set realistic goals or make

plans independently of others; and severe limitations in the remaining areas of

functioning.  Tr. 1450-51.  She further opined Plaintiff has extreme limitations in

all four "B" criteria, meets the "C" criteria for the mental health listings, would be

off task more than 30 percent of the time, and would miss four or more days of

work per month.  Tr. 1452-53.  The ALJ found Ms. Hillmer's opinion was not

persuasive.  Tr. 26.

   First, the ALJ found Ms. Hillmer's opinion was in a check-box form and

lacked a supporting narrative or explanation.  *Id.*  Supportability is one of the most

important factors an ALJ must consider when determining how persuasive a

medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more

relevant objective evidence and supporting explanations that support a medical

opinion, the more persuasive the medical opinion is.  20 C.F.R. §§

404.1520c(c)(1), 416.920c(c)(1).  Ms. Hillmer's opinion consists only of check

boxes and does not contain any explanation or citations to supporting evidence.

Tr. 1450-53.  Plaintiff argues the opinion is supported by the treatment notes,

however the ALJ reasonably found the opinion is also not supported by the

treatment records, as discussed *infra.*

Second, the ALJ found Ms. Hillmer's opinion was inconsistent with

Plaintiff's activities of daily living.  Tr. 26.  Consistency with the other evidence is

one of the most important factors in determining the persuasiveness of an opinion.

20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As discussed *supra,* the ALJ

reasonably found Plaintiff's ability to engage in multiple activities, including

caring for children and taking classes through a college, is inconsistent with an

opinion that Plaintiff has multiple marked limitations.

Third, the ALJ found Ms. Hillmer's opinion is not supported by the

treatment records.  Tr. 26.  Supportability is one of the most important factors an

ALJ must consider when determining how persuasive a medical opinion is.  20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence

and supporting explanations that support a medical opinion, the more persuasive

ORDER - 23

the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Plaintiff's

treatment notes on the same day Ms. Hillmer rendered her opinion document

normal speech, thoughts, memory, attention, language, and fund of knowledge,

although Plaintiff appeared sad and depressed.  Tr. 1473.  At multiple

appointments, Plaintiff had generally normal mental functioning despite reported

symptoms.  Tr. 1462, 1467-68, 1473.  Plaintiff argues the medical records are

consistent with Ms. Hillmer's opinion, as the records document Plaintiff's reported

symptoms, including nightmares, anxiety, poor sleep, depression, and avoiding

social settings, as well as noted abnormalities at some appointments, including

intermittent eye contact, hesitant speech, and distractible attention/concentration.

ECF No. 16 at 13 (citing Tr. 1455-57, 1460, 1471-73, 1630, 1632).  However, Ms.

Hillmer's records also document normal cooperation, speech, thoughts, memory,

attention, language, and fund of knowledge, despite Plaintiff's reported symptoms.

Tr. 1462, 1467-68, 1473.  On this record, the ALJ reasonably found that Ms.

Hillmer's opinion that Plaintiff had multiple marked to severe limitations was

inconsistent with the objective evidence.

     *5.  Dr. Veraldi*

     Dr. Veraldi, a reviewing psychological expert, rendered an opinion on

Plaintiff's functioning at the hearing.  Tr. 81-90.  Dr. Veraldi stated Plaintiff has

been diagnosed with depression and bipolar disorder, borderline personality

disorder, and PTSD.  Tr. 82-83.  Dr. Veraldi opined Plaintiff has a marked

limitation in concentration, persisting, or maintaining pace; and moderate

limitations in understanding, remembering, or applying information, adapting or

managing oneself, and interacting with others.  Tr. 84-85.  Dr. Veraldi further

opined Plaintiff could do at least simple, routine, repetitive work, she cannot work

with the public but can interact in small groups as long as it is not highly

cooperative, and she cannot handle fast-paced production nor having to make a lot

of independent, quick decisions nor multi-tasking.  Tr. 85-88.  Dr. Veraldi opined

Plaintiff's persistence would be impaired by stressors but her ability to sustain

work without an increase in symptoms would improve if she had less stressors.  Tr.

87-88.  She further opined Plaintiff would miss "some work" but she could not

specify how many days, and said the days missed could be for

psychological/medical reasons or she could just not show up for work.  Tr. 89-90.

The ALJ found Dr. Veraldi's opinion was generally persuasive.  Tr. 25.

Plaintiff argues the ALJ erred in finding Dr. Veraldi's opinion was

persuasive, but not fully accounting for the opinion in the RFC and at step three.

ECF No. 16 at 15.  Plaintiff argues the ALJ did not account for Plaintiff's marked

limitation in concentration, persistence, and maintaining pace, nor the days she

would miss from work.  *Id.*  However, Dr. Veraldi did not render an opinion on

how frequently Plaintiff would miss work and stated some missed days may be due

ORDER - 25

to Plaintiff simply not showing up and not due to her symptoms.  Tr. 89-90.

Although Dr. Veraldi opined Plaintiff had a marked limitation in concentration,

persistence, or pace, she also opined Plaintiff was still capable of performing

simple routine work with additional limitations.  Tr. 85-90.  The ALJ accounted for

Dr. Veraldi's opinion by incorporating the opinion into the RFC.  Tr. 23.  Plaintiff

has not demonstrated the ALJ harmfully erred by failing to incorporate a portion of

Dr. Veraldi's opinion into the RFC.  Plaintiff is not entitled to remand on these

grounds.

**C. Step Two**

Plaintiff contends the ALJ erred at step two by failing to identify her

physical conditions as severe impairments.  ECF No. 16 at 15-17.  At step two of

the sequential process, the ALJ must determine whether claimant suffers from a

"severe" impairment, i.e., one that significantly limits her physical or mental

ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To establish a severe impairment, the claimant must first demonstrate that the

impairment results from anatomical, physiological, or psychological abnormalities

that can be shown by medically acceptable clinical or laboratory diagnostic

techniques.  20 C.F.R. §§ 404.1521, 416.921.  In other words, the claimant must

establish the existence of the physical or mental impairment through objective

medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable

medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion.  *Id.*

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…."  Social Security Ruling (SSR) 85-28 at *3.  Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1522(a), 416.922(a); SSR 85-28.[4]

Step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must

---

[4] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 27

1  determine whether the ALJ had substantial evidence to find that the medical

2  evidence clearly established that [Plaintiff] did not have a medically severe

3  impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687

4  (9th Cir. 2005).

5        First, the ALJ found fibromyalgia was not a medically determinable

6  impairment.  Tr. 20.  Plaintiff contends the ALJ erred in failing to find

7  fibromyalgia is a severe impairment.  ECF No. 16 at 16.  Plaintiff argues

8  fibromyalgia is a severe impairment because an ARNP diagnosed fibromyalgia,

9  and there is "no dispute" as to the presence of the signs and symptoms of

10  fibromyalgia in the record, and the ALJ acknowledged Plaintiff was prescribed

11  Cymbalta for fibromyalgia.  *Id.* (citing Tr. 91).  Plaintiff cites to the hearing when

12  Plaintiff's counsel stated Plaintiff had been prescribed Cymbalta, which Plaintiff

13  reported did not help with her fibromyalgia.  Tr. 91.  Plaintiff does not cite to any

14  other evidence of her fibromyalgia to support her argument that fibromyalgia is a

15  severe medically determinable impairment.  Defendant notes the Social Security

16  Administration has set forth diagnostic criteria for fibromyalgia and Plaintiff has

17  not argued she meets the criteria.  ECF No. 17 at 2-3 (citing SSR 12-2p).  The ALJ

18  found there is no record of fibromyalgia tender point examinations in the record,

19  nor is there documentation of repeated manifestations of typical fibromyalgia

20  symptoms.  Tr. 20.  In the reply brief, Plaintiff did not respond to Defendant's

1  argument, but only repeated the statement that there is no dispute of the symptoms

2  of fibromyalgia in the record, without citing to any evidence of fibromyalgia in the

3  record.  ECF No. 18 at 9.  Plaintiff has not met her burden in demonstrating

4  fibromyalgia is a severe medically determinable impairment.

5       Next, Plaintiff argues the ALJ erred in failing to find her bulimia, and

6  cervical and lumbar impairments were severe impairments.  ECF No. 16 at 16-17.

7  However, Plaintiff again does not present any arguments as to how these

8  impairments are severe medically determinable impairments.  Plaintiff has not met

9  her burden in demonstrating the ALJ erred at step two.  Plaintiff is not entitled to

10  remand on these grounds.

11  **D. Step Three**

12       Plaintiff contends that the ALJ erred by finding that Plaintiff's fibromyalgia

13  and other impairments did not meet or equal Listings 12.04, 12.06, 12.08, 12.15,

14  and 14.09D.  ECF No. 16 at 17-18.

15       At step three, the ALJ must determine if a claimant's impairments meet or

16  equal a listed impairment.  20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii).

17  The Listing of Impairments "describes for each of the major body systems

18  impairments [which are considered] severe enough to prevent an individual from

19  doing any gainful activity, regardless of his or her age, education, or work

20  experience."  20 C.F.R. §§ 416.925, 404.1525.  "Listed impairments are

ORDER - 29

1  purposefully set at a high level of severity because 'the listings were designed to

2  operate as a presumption of disability that makes further inquiry unnecessary.'"

3  *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*,

4  493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because

5  they automatically end the five-step inquiry, before residual functional capacity is

6  even considered."  *Kennedy*, 738 F.3d at 1176.  If a claimant meets the listed

7  criteria for disability, he will be found to be disabled.  20 C.F.R. §§

8  416.920(a)(4)(iii), 404.1520(a)(4)(iii).

9       "To *meet* a listed impairment, a claimant must establish that he or she meets

10  each characteristic of a listed impairment relevant to his or her claim."  *Tackett*,

11  180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 416.925(d), 404.1525(d).

12  "To *equal* a listed impairment, a claimant must establish symptoms, signs and

13  laboratory findings 'at least equal in severity and duration' to the characteristics of

14  a relevant listed impairment . . . ."  *Tackett*, 180 F.3d at 1099 (emphasis in original)

15  (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).  "If a claimant suffers

16  from multiple impairments and none of them individually meets or equals a listed

17  impairment, the collective symptoms, signs and laboratory findings of all of the

18  claimant's impairments will be evaluated to determine whether they meet or equal

19  the characteristics of any relevant listed impairment."  *Tackett*, 180 F.3d at 1099.

20  However, "[m]edical equivalence must be based on medical findings," and "[a]

ORDER - 30

generalized assertion of functional problems is not enough to establish disability at

step three." *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing his impairment (or

combination of impairments) meets or equals the criteria of a listed impairments.

*Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's

articulation of the reason(s) why the individual is or is not disabled at a later step in

the sequential evaluation process will provide rationale that is sufficient for a

subsequent reviewer or court to determine the basis for the finding about medical

equivalence at step 3." SSR 17-2P, 2017 WL 3928306, at *4 (effective March 27,

2017).

Here, the ALJ found that Plaintiff's impairments and combinations of

impairments did not meet or equal any listings, including Listing 12.04, 12.06,

12.08, and 12.15. Tr. 22. The ALJ did not address whether Plaintiff's

fibromyalgia equals Listing 14.09D. However, as the ALJ did not err in finding

Plaintiff's fibromyalgia is not a severe medically determinable impairment, as

discussed *supra,* the ALJ did not err in not addressing Listing 14.09D. Plaintiff's

argument regarding Listings 12.04, 12.06, and 12.08 rest on the argument that with

Plaintiff's fibromyalgia symptoms, her impairments equal the severity of one of

the listings. ECF No. 16 at 18. However, Plaintiff did not meet her burden in

demonstrating fibromyalgia is a severe medically determinable impairment.

ORDER - 31

1    Plaintiff also argues she has marked to extreme limitations in the paragraph B

2    criteria but does not set forth an argument as to which B criteria she meets, nor

3    does she set forth any argument regarding the A criteria for Listing 12.04, 12.06,

4    12.08, nor 12.15, nor how her impairments equal any of the individual listings.  *Id.*

5    Plaintiff has not met her burden in demonstrating she meets or equals a listing.

6    Plaintiff is not entitled to remand on these grounds.

7        **E. Plaintiff's Symptom Claims**

8        Plaintiff faults the ALJ for failing to rely on reasons that were clear and

9    convincing in discrediting her symptom claims.  ECF No. 16 at 19-20.  An ALJ

10   engages in a two-step analysis to determine whether to discount a claimant's

11   testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

12   "First, the ALJ must determine whether there is objective medical evidence of an

13   underlying impairment which could reasonably be expected to produce the pain or

14   other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

15   "The claimant is not required to show that [the claimant's] impairment could

16   reasonably be expected to cause the severity of the symptom [the claimant] has

17   alleged; [the claimant] need only show that it could reasonably have caused some

18   degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

19       Second, "[i]f the claimant meets the first test and there is no evidence of

20   malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 24.

### 1. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were not consistent with the objective medical evidence.  Tr. 19-24.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

The ALJ found Plaintiff's allegations of disabling mental health symptoms were inconsistent with the generally normal mental status findings.  Tr. 24.

ORDER - 34

Plaintiff was rarely distressed, and the examinations were generally unremarkable. *Id.* Treatment records document normal memory, mood, concentration, insight, judgment, and impulse control at multiple appointments. Tr. 22-23 (citing, e.g., 464, 469, 472, 478, 1462, 1473). Plaintiff reported symptoms, such as disorientation, depression, hearing voices that scared/distracted her, and binging and purging, Tr. 1441, 1444, but the records document no significant change in her mood, affect, thoughts, orientation, motor activity, speech, behavior, or functioning, Tr. 1437, 1440. While the records also document some abnormalities, including dysthymic and anxious mood, distractibility and poor concentration at some appointments, Tr. 22 (citing, e.g., Tr. 426, 753), the ALJ reasonably found the objective medical evidence is inconsistent with Plaintiff's allegations.

Plaintiff contends the ALJ made no findings regarding Plaintiff's physical impairments, and thus her physical testimony should be credited as true. ECF No. 16 at 19. However, the ALJ considered Plaintiff's symptom claims related to her physical impairments at step two, as the ALJ found Plaintiff's physical impairments were not severe medically determinable impairments. Tr. 20-21. The ALJ found there are complaints of physical symptoms throughout the record, but minimal objective evidence of the impairments and any functional limitations the impairments cause. Tr. 19-21. The ALJ noted Plaintiff's physical symptom claims tend to be episodic and mild. Tr. 19-20 (citing, e.g., Tr. 644, 649, 1616). Despite

ORDER - 35

her symptom complaints, imaging has been normal.  Tr. 20 (citing Tr. 506, 1591,

1646).  As discussed *supra,* there is no documentation of tender point testing nor

other objective evidence to confirm a fibromyalgia diagnosis.  Tr. 20.  On this

record, the ALJ reasonably found Plaintiff's symptom claims were inconsistent

with the objective medical evidence.  This was a clear and convincing reason,

along with the other reasons offered, to reject Plaintiff's symptom claims.

### 2.  Activities of Daily Living

The ALJ found Plaintiff's symptom allegations were inconsistent with

Plaintiff's activities of daily living.  Tr. 21, 24.  The ALJ may consider a

claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.

If a claimant can spend a substantial part of the day engaged in pursuits involving

the performance of exertional or non-exertional functions, the ALJ may find these

activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at

603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark

room in order to be eligible for benefits, the ALJ may discount a claimant's

symptom claims when the claimant reports participation in everyday activities

indicating capacities that are transferable to a work setting" or when activities

"contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-

13.  The ability to care for others without help has been considered an activity that

may undermine claims of totally disabling pain.  *Rollins,* 261 F.3d at 857.

ORDER - 36

However, if the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

The ALJ found Plaintiff's allegations of disabling mental health symptoms, and her reports of engaging in minimal activities, are inconsistent with her reports to medical providers. Tr. 24. While Plaintiff testified that she receives significant help from her parents, she reported to medical providers that she provides care to multiple children with no support. *Id.* (citing Tr. 583, 1528, 1537). Plaintiff has reported preparing meals, completing chores, driving, shopping, and handling her own finances. Tr. 24 (citing Tr. 356-57). Plaintiff testified that she was enrolled in GED preparation classes, but she told a provider she was attending community college for business management. Tr. 24 (citing Tr. 1576). Plaintiff argues her activities are consistent with her allegations, as she needs assistance with her daughter's activities, and she had difficulties with her GED classes and was unable to complete them. ECF No. 16 at 20. However, there are multiple records that reference Plaintiff "doing everything by herself," and providing the care for her children alone. Tr. 583, 1434, 1455, 1528, 1576. There are also records that note Plaintiff reported her mother was coming into town, and her mother only coming to assist for a few months at the end of 2019, which indicates her mother

previously was not around to assist.  Tr. 1460, 1466.  It is unclear from the record

what classes Plaintiff took through a college, but Plaintiff concedes she was taking

classes.  While Plaintiff argues she had difficulty with the classes, and she testified

at her April 2020 hearing that she was unable to complete the GED classes, Tr. 97,

Plaintiff reported to a provider that she successfully completed the classes by

January 2020, Tr. 1466.

The ALJ also found Plaintiff's physical symptom complaints were

inconsistent with Plaintiff's activities of daily living.  Tr. 21.  Plaintiff reported

being able to handle her self-care, chores, and meal preparation, and she can shop,

drive, care for her children, and attend school, although she reported receiving

some assistance with tasks from her parents.  *Id.* (citing Tr. 356-57).  On this

record, the ALJ reasonably found the Plaintiff's activities of daily living were

inconsistent with her symptom claims.  This was a clear and convincing reason,

supported by substantial evidence, to reject Plaintiff's symptom claims.

### 3. Lack of Treatment

The ALJ found Plaintiff's lack of treatment was inconsistent with her

allegations.  Tr. 21.  An unexplained, or inadequately explained, failure to seek

treatment or follow a prescribed course of treatment may be considered when

evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638

(9th Cir. 2007).  And evidence of a claimant's self-limitation and lack of

motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

While Plaintiff alleges disabling mental health symptoms, the ALJ found such allegations were inconsistent with Plaintiff's routine, infrequent mental health treatment. Tr. 24 (citing Tr. 1429-49, 1454-75). Plaintiff argues the ALJ's finding is not supported by substantial evidence, as she was seen by multiple providers for mental health treatment. ECF No. 16 at 20. As Defendant notes, Plaintiff had periods where she went up to two to three months without counseling. ECF No. 17 at 8-9, Tr. 1436, 1444. Plaintiff was seen for counseling and medication management but needed minimal medication adjustments and she did not demonstrate a need for more frequent counseling. Tr. 1436, 1457, 1462-63, 1467-

ORDER - 39

68. Plaintiff does not offer any explanation for her two-to-three-month gaps in treatment.

The ALJ also found Plaintiff's lack of ongoing treatment was inconsistent with Plaintiff's allegations of chronic, disabling physical impairments. Tr. 21. Plaintiff has generally received intermittent treatment for various acute and transient symptoms. *Id.* For example, while Plaintiff complains of chronic and significant headaches, there is minimal evidence of treatment for headaches in the record and she often denied having a headache. Tr. 19, 772, 1394, 1398, 1493, 1520. On this record, the ALJ reasonably concluded that Plaintiff's symptom claims were inconsistent with her lack of treatment. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints. Plaintiff is not entitled to remand on these grounds.

**F. Step Five**

Plaintiff contends the ALJ erred at step five by relying on the vocational expert's response to an incomplete hypothetical. ECF No. 16 at 21. However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. *Id.* For reasons discussed throughout this decision, the ALJ's rejection of Plaintiff's symptom claims, and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in

finding Plaintiff capable of performing other work in the national economy based on the hypothetical containing Plaintiff's RFC. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED May 19, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 41